**KAZEROUNI LAW GROUP, APC**
Gor Antonyan, Esq. (SBN: 354718)
gor@kazlg.com
245 Fischer Avenue, Unit D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

**KAZEROUNI LAW GROUP, APC**
David J. McGlothlin (SBN: 253265)
david@kazlg.com
301 E. Bethany Home Road, Suite C-195
Phoenix, AZ 85012
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

*Attorneys for Plaintiff,*
Ryan Miller

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RYAN MILLER,<br><br>　　　　　　Plaintiff,<br><br>　vs.<br><br>LOL FARMS LLC DBA PRIME CUTS CANNABIS NURSERY AND SEED BANK;<br><br>　　　　　　Defendant. | Case No.:<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT OF 1991, 47 U.S.C §§ 227(C),** *ET SEQ.*<br><br>**JURY TRIAL DEMANDED** |

# INTRODUCTION

1. Plaintiff RYAN MILLER ("Plaintiff") brings this lawsuit for damages resulting from the unlawful actions of LOL FARMS LLC DBA PRIME CUTS CANNABIS NURSERY and SEED BANK ("Prime Cuts" or "Defendant"). Defendant negligently, knowingly, and/or willfully placed unsolicited text messages to Plaintiff on his cellular phone number which is registered with the National Do-Not Call Registry, in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* (the "TCPA"), and related regulations, including but not limited to 47 C.F.R. § 64.1200(c). Plaintiff seeks relief in the form of statutory damages and injunctive relief.

2. Plaintiff alleges as follows upon personal knowledge as to himself and his own acts and experiences and, as to all other matters, upon information and belief including investigation conducted by Plaintiff's attorneys.

3. This case is brought to enforce the consumer privacy provisions afforded by the TCPA, a federal law that was designed to curtail abusive telemarketing practices precisely like those described herein.

4. Defendant sent unsolicited text messages to Plaintiff's cellular telephone on multiple occasions, which was registered with the National Do-Not Call Registry.

5. Defendant has violated 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c) by bombarding consumers' mobile phones registered with the National Do-Not Call Registry with non-emergency advertising and marketing text messages without prior express written consent.

6. The TCPA was enacted to protect consumers from unsolicited and unwanted telephone calls and text messages exactly like those alleged in this case.

7. In response to Defendant's unlawful conduct, Plaintiff seeks an injunction requiring Defendant to cease all unsolicited voice phone calls and text messages to his phone number as well as an award of statutory damages per violation, together with court costs, reasonable attorneys' fees, and treble damages (for

knowing and/or willful violations).

## JURISDICTION AND VENUE

8. This Court has federal question subject matter jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1331 as Plaintiff alleges violations of a federal statute, the TCPA.

9. The Court has personal jurisdiction over Defendant because Defendant conducts significant business in this District, and the unlawful conduct alleged in this Complaint occurred in, was directed to, and/or emanated from this District.

10. Venue is proper in the United States District Court for the Northern District of California pursuant to 18 U.S.C. § 1391(b) because Defendant is subject to personal jurisdiction in the County of Monterey, State of California as not only does Defendant regularly conduct business throughout the State of California, but Plaintiff resides within the State of California, County of Monterey.

## PARTIES

11. Plaintiff is, and at all times mentioned herein was, a citizen and resident of the State of California, County of Monterey. Plaintiff is, and at all times mentioned herein was, a "person," as defined by 47 U.S.C. § 153(39).

12. Defendant is a limited liability company formed under the laws of California with its principal place of business in Sonoma, California. Defendant is, and at all times mentioned herein was a "person," as defined by 47 U.S.C. § 153(39).

13. Plaintiff alleges that at all times relevant herein Defendant conducted business in the State of California and in the County of Monterey, and within this judicial district.

14. Whenever in this Complaint it is alleged that Defendant committed any act or omission, it is meant that the Defendant's officers, directors, vice-principals, agents, servants, or employees committed such act or omission and that at the time such act or omission was committed, it was done with the full authorization, ratification or approval of Defendant or was done in the routine normal course and

scope of employment of the Defendant's officers, directors, vice-principals, agents, servants, or employees.

## TCPA BACKGROUND

15. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In doing so, Congress recognized that "[u]nrestricted telemarketing … can be an intrusive invasion of privacy.…" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243 § 2(5) (1991) (codified at 47 U.S.C. § 227).

16. The TCPA was designed to prevent calls and messages like the one described within this complaint, and to protect the privacy of citizens like Plaintiff. "Voluminous consumer complaints about abuses of telephone technology – for example, computerized calls dispatched to private homes – prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).

17. Specifically, the TCPA restricts telephone solicitations (*i.e.*, telemarketing) and the use of automated telephone equipment, as well as violations of the TCPA's National Do-Not-Call provision of 47 C.F.R. § 64.1200(c).[1] The TCPA limits the use of automatic dialing systems, artificial or prerecorded voice messages, SMS text messages, and fax machines.

18. In enacting the TCPA, Congress intended to give consumers a choice as to how creditors and telemarketers may call them and made specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer." TCPA, Pub.L. No. 102-243, § 11. Toward this end, Congress found that:

---

[1] According to the Federal Communications Commission's website, https://www.fcc.gov/consumers/guides/wireless-phones-and-national-do-not-call-list, accessed on June 3, 2021: Placing telemarketing calls to wireless phones is - and always has been - illegal in most cases.

> Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

*Id*. at § 12; *see also, Martin v. Leading Edge Recovery Solutions, LLC*, 2012 WL 3292838, at *4 (N.D. Ill. Aug. 10, 2012) (citing Congressional finding on TCPA's purpose).

19. Text messages are calls and are subject to the TCPA. *See, e.g.*, *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 666 (2016); *Satterfield v. Simon & Schuster, Inc.,* 569 F.3d 946, 954 (9th Cir. 2009).

20. 47 C.F.R. § 64.1200(a)(2) additionally states, with respect to advertisement and telemarketing calls—of which Defendant's texts to Plaintiff are—that "[n]o person or entity may . . . [i]nitiate or cause to be initiated, any telephone call that includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system or an artificial or prerecorded voice, to any of the lines or telephone numbers described in paragraphs (a)(1)(i) through (iii) of this section, other than a call made with the prior express written consent of the called party …"

21. 47 C.F.R. § 64.1200(f)(8) defines "prior express written consent" as "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered."

22.    As of October 16, 2013, unless the recipient has given *prior express written consent*,[2] the TCPA and Federal Communications Commission ("FCC") rules under the TCPA generally:

- Prohibit solicitors from calling residences before 8 a.m. or after 9 p.m., local time.
- Require that solicitors provide their name, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which that person or entity may be contacted.
- Prohibit solicitations to residences that use an artificial voice or a recording.
- Prohibit any call or text made using automated telephone equipment or an artificial or prerecorded voice to a wireless device or cellular telephone.
- Prohibit any call made using automated telephone equipment or an artificial or prerecorded voice to an emergency line (*e.g.*, "911"), a hospital emergency number, a physician's office, a hospital/health care facility/elderly room, a cellular telephone, or any service for which the recipient is charged for the call.
- Prohibit autodialed calls that engage two or more lines of a multi-line business.
- Prohibit unsolicited advertising faxes.
- Prohibit certain calls to members of the National Do-Not Call Registry.

---

[2] Prior express written consent means "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered." 47 C.F.R. § 64.1200(f)(8).

23. Furthermore, in 2008, the FCC held that "a creditor on whose behalf an autodialed or prerecorded message call is made to a wireless number bears the responsibility for any violation of the Commission's rules." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act, Declaratory Ruling on Motion by ACA International for Reconsideration*, 23 FCC Rcd. 559, 565, ¶ 10 (Jan. 4, 2008); *Birchmeier v. Caribbean Cruise Line, Inc.*, 2012 WL 7062748 (N.D. Ill., Dec. 31, 2012).

24. Accordingly, the entity can be liable under the TCPA for a call made on its behalf, even if the entity did not directly place the call. Under those circumstances, the entity is deemed to have initiated the call through the person or entity.

25. With respect to misdialed or wrong-number calls, the FCC recently clarified that "callers who make calls without knowledge of reassignment and with a reasonable basis to believe that they have valid consent to make the call should be able to initiate one call after reassignment as an additional opportunity to gain actual or constructive knowledge of the reassignment and cease future calls to the new subscriber." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, FCC 15–72, 30 F.C.C.R. 7961, ¶¶ 71-72 (July 10, 2015). "If this one additional call does not yield actual knowledge of reassignment, we deem the caller to have constructive knowledge of such." *Id.* Thus, any second call placed to a wrong number violates the TCPA.

26. The TCPA provides for damages in the amount of $500 for each negligent violation and $1,500 for each knowing violation. *See* 47 U.S.C. § 227(c)(5).

## FACTUAL ALLEGATIONS

27. Defendant is a cannabis nursery and seed bank operating within California, specializing in the cultivation, propagation, and distribution of cannabis plants and seeds, supplying both wholesale and retail markets statewide.

28. In Defendant's overzealous attempt to market its services, however, Defendant willfully or knowingly sent (and continues to send) unsolicited and automated telemarketing text messages to persons who have registered their cellular telephone number on the National Do-Not Call Registry.

29. Through this conduct, Defendant has invaded the Plaintiff's privacy.

30. At all times relevant, Plaintiff was a resident of the State of California. Plaintiff is, and at all times mentioned herein was, a "person," as defined by 47 U.S.C. § 153(39).

31. Defendant is, and at all times mentioned herein was, a limited liability company and a "person," as defined by 47 U.S.C. § 153(39).

32. At all times relevant Defendant conducted business in the State of California and in the County of Monterey, within this judicial district.

33. At all relevant times, Plaintiff was assigned, and was the owner of, a cellular telephone number (831) 682-3885 ("Cell Phone").

34. Plaintiff is the sole user and/or subscriber of his Cell Phone and is financially responsible for phone service to his Cell Phone.

35. Plaintiff's Cell Phone is assigned to him as his personal cellular telephone and Plaintiff uses his Cell Phone primarily for calls with his friends and family and other personal matters.

36. Plaintiff's Cell Phone was added to the National Do-Not-Call Registry on or about June 19, 2021.

37. Between January 2022, and the present day, Defendant sent a staggering **hundred and fifteen (115)** unsolicited text messages to Plaintiff's cellular telephone.[3]

---

[3] According to the Federal Communications Commission's website, https://www.fcc.gov/consumers/guides/wireless-phones-and-national-do-not-call-list, accessed on February 4, 2025: Placing telemarketing calls to wireless phones is - and always has been - illegal in most cases.

- 8 -
COMPLAINT

38.  All of the unsolicited text messages were sent from (707) 403-3823, (415) 829-6021, (415) 829-6016, (707) 231-4172, (707) 231-4193, (707) 231-4181, (707) 221-4505, (707) 309-6236, (707) 516-6470, (707) 632-2985, (707) 329-8618, (707) 221-5126, (707) 371-8937, (707) 682-0787, (707) 867-4571, which are all phone numbers owned, assigned to, and operated by the Defendant.

39.  In addition, most of the text messages sent to Plaintiff identified the sender as "Prime Cuts" or "Prime Cuts Nursery."

40.  Each of the text messages sent by Defendant to Plaintiff's Cellphone contained marketing content intended to induce Plaintiff to purchase Defendant's products or services.

41.  Many of the text messages sent by Defendant to Plaintiff's Cellphone included images, either depicting Defendant's services or products or displaying promotional posters advertising Defendant's offerings.

42.  The text messages received by Plaintiff constitute telephone solicitations pursuant to 47 C.F.R. § 64.1200(c), as they were an attempt to promote or sell Defendant's services.

43.  Plaintiff did not provide Defendant with his cellular telephone number at any point in time, nor did he give permission for Defendant to message it.

44.  Plaintiff did not have an established business relationship with Defendant during the time of the telephone solicitations from Defendant.

45.  Plaintiff did not have a personal relationship with Defendant at any point in time.

46.  Plaintiff did not give Defendant prior express invitation or consent in writing for Defendant to message Plaintiff's cellular telephone for marketing or solicitation purposes.

47.  Defendant sent at minimum hundred fifteen (115) unsolicited text messages to Plaintiff's Cell Phone which was registered with the National Do-Not Call Registry, for seven months prior to the unsolicited text messages in violation of

the TCPA, including 47 C.F.R. § 64.1200(c).

48. Upon information and belief, at all relevant times, Defendant failed to establish and implement reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations prescribed under 47 U.S.C. § 227(c)(5), including the Do-Not Call provision in 47 C.F.R. § 64.1200(c).

49. Upon information and belief, at all relevant times, Defendant failed to establish and implement reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations prescribed under 47 U.S.C. § 227(c)(5), including the internal Do-Not Call provision in 47 C.F.R. § 64.1200(d).

50. Defendant did not send the text messages for an emergency purpose as defined by 47 U.S.C. § 227(b)(1)(A)(i).

## ARTICLE III STANDING

51. Defendant sent multiple text messages to Plaintiff's personal cellular telephone which was registered on the National Do-Not-Call Registry. Such unwanted solicitations from Defendant are a nuisance, an invasion of privacy, and wasted Plaintiff's time and enjoyment in use of his personal cellular telephone. All three of these injuries are concrete and *de facto*.

52. Furthermore, Plaintiff was distracted, inconvenienced, and annoyed by having to take time opening and reading each text message.

53. The above telephone solicitations were directly and explicitly linked to Defendant. Defendant's text messages identified Defendant as "Prime Cuts," or "Prime Cuts Nursery," which is a fictitious business name for LOL Farms LLC, cannabis nursery that attempted to solicit business from Plaintiff. These text messages are the sole source of Plaintiff's injuries. Therefore, Plaintiff has illustrated facts that show that his injuries are traceable to the conduct of Defendant.

54. Plaintiff's Request for Relief includes a request for damages for each text message sent by Defendant to his Cellphone as authorized by statute in 47 U.S.C. § 227, *et seq*. The statutory damages were set by Congress and specifically redress

the damages suffered by Plaintiff.

## VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT
## REGARDING THE NATIONAL DO-NOT CALL REGISTRY
## 47 C.F.R. § 64.1200(C), 47 U.S.C. § 227(C)(5)

55.  Plaintiff re-alleges and incorporates by reference each preceding paragraph as though fully set forth herein.

56.  Plaintiff received more than one marketing text message or phone call within a 12-month period, sent by or on behalf of Defendant, for the express purpose of marketing Defendant's goods and/or services without Plaintiff's written prior express consent.

57.  At all relevant times, Defendant knew or should have known that its conduct as alleged herein violated the TCPA.

58.  Defendant sent unsolicited and unauthorized text messages to the cellular telephone of Plaintiff which was registered with the National Do-Not Call Registry, for the purpose of marketing goods and/or services to Plaintiff.

59.  Defendant knew that it did not have prior express written consent to send these text messages and knew or should have known that it was sending text messages to cellular number on the National Do-Not Call Registry in violation of the TCPA.

60.  Defendant willfully or knowingly allowed text messages to be sent to Plaintiff's cellular telephone number that was on the National Do-Not Call Registry. For instance, Defendant could have determined from a review of its own business records and the National Do-Not Call Registry that it could not contact Plaintiff; yet it disregarded such information and sent illegal and unwanted solicitation text messages.

61.  Defendant's text messages caused Plaintiff actual harm including, but not limited to, invasion of his personal privacy, aggravation, inconvenience, nuisance and disruption in his daily life, reduction in cellular telephone battery life, data, and

loss of use of his cellular telephone.

62. Because Defendant knew or should have known that Plaintiff's cellular telephone number was on the National Do-Not Call Registry, the Court should treble the amount of statutory damages available to Plaintiff pursuant to § 227(c)(5) of the TCPA.

63. As a result of Defendant's violations, Plaintiff is entitled to an award of $1,500.00 in statutory damages, for each and every willful or knowing violation, pursuant to 47 U.S.C. § 227(c)(5)(B) and 47 U.S.C. § 227(c)(5)(C) or in the alternative an award of $500.00 in statutory damages, for each and every negligent violation, pursuant to 47 U.S.C. § 227(c)(5)(B).

64. Plaintiff is also entitled to and seek injunctive relief, pursuant to 47 U.S.C. § 227(c)(5)(A), prohibiting such conduct in the future.

### **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests the following relief:

- Injunctive relief prohibiting Defendant from engaging in such conduct in the future pursuant to 47 U.S.C. § 227(c)(5)(A);
- Actual damages for violations of 47 U.S.C. §§ 227, *et seq*. pursuant to 47 U.S.C. § 227(c)(5)(B);
- Statutory damages of $500.00 for each and every one of Defendant's negligent violations of 47 U.S.C. §§ 227, *et seq*. pursuant to 47 U.S.C. § 227(c)(5)(B);
- Statutory damages of $1,500.00 for each and every one of Defendant's knowing or willful violations of 47 U.S.C. §§ 227, *et seq*. pursuant to 47 U.S.C. § 227(c)(5)(C);
- Costs of suit;
- Pre-judgment and post-judgment interest on monetary relief; and
- All other and further relief as the Court deems necessary, just, and proper.

## DEMAND FOR JURY TRIAL

Pursuant to the Seventh Amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

Dated: February 10, 2025          Respectfully submitted,

                                            **KAZEROUNI LAW GROUP, APC**

                                            By: *Gor Antonyan*
                                            Gor Antonyan, Esq.
                                            gor@kazlg.com
                                            *Attorneys for Plaintiff*